UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HEATHER C., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 2:22-cv-00103-GZS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred by failing to adequately develop the record. *See* Statement of Errors (ECF No. 14). In the particular circumstances of this case, I agree and recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

### I. Background

The Plaintiff applied for benefits in the fall of 2018. *See* Record at 40, 159, 166. After her claim was denied at the initial and reconsideration levels, the Plaintiff requested a hearing before an ALJ. *See id.* at 159-64, 166-74, 188-90. The ALJ held a hearing in August 2020 and a supplemental hearing in February 2021, *see id.* at 63-152, following which she issued a decision finding that the Plaintiff had the severe impairments of mood, anxiety, and personality disorders, *see id.* at 40-56. The ALJ nevertheless determined that the Plaintiff had the residual functional

1

capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with several additional nonexertional limitations. *See id.* at 47. Based on the Plaintiff's RFC, the ALJ concluded that she could return to her past relevant work as a housekeeper or perform other jobs existing in significant numbers in the national economy and was therefore not disabled. *See id.* at 53-56. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

Prior to her first hearing before the ALJ, the Plaintiff submitted letters from her treating psychologist Cecilia Kinast, Ph.D. *See* Record at 804-05, 812-13. In those

letters, Dr. Kinast indicated that, based on "neuropsychological testing conducted in September 2018," the Plaintiff met the diagnostic criteria for an autism spectrum disorder. *Id.* at 804. Dr. Kinast further noted that the Plaintiff demonstrated "many behaviors that would interfer[e] with successful job performance and steady employment," including that she was easily confused and overwhelmed, struggled to maintain her focus and work efficiently, and would be regularly absent from work. *Id.* at 804, 812-13.

During the first hearing, the ALJ noted that the neuropsychological examination report referenced in Dr. Kinast's letters had not been made part of the record. *See id.* at 116-17. The Plaintiff submitted a copy after the hearing, *see id.* at 817-21, following which the ALJ submitted written interrogatories to independent medical expert Allison Podczerwinsky, Psy.D., *see id.* at 835-40. In her response to the interrogatories, Dr. Podczerwinsky disagreed with Dr. Kinast's autism diagnosis and opined that Dr. Kinast's methodology was flawed and her findings were contradicted by the Plaintiff's self-reports to other providers. *See id.* at 840. Dr. Podczerwinsky ultimately concluded that personality traits and substance use were the "primary causal factors for" the Plaintiff's "fluctuating limitations." *Id.*

In October 2020, the Plaintiff requested the opportunity to cross-examine Dr. Podczerwinsky. *See id.* at 455. The ALJ held a supplemental hearing in February 2021 where she explained that Dr. Podczerwinsky was contracted only to

3

provide written responses to interrogatories but that she had procured "another medical expert," Jennifer Blitz, Psy.D., to appear at the hearing. *Id.* at 65.

When asked by the ALJ whether there was "sufficient objective medical evidence to allow" her "to form an opinion about the nature and the severity of the [Plaintiff's] impairments," Dr. Blitz testified,

> Well, I believe there is but I did want to point out . . . that one of the problems with Dr. Kinast's evaluation . . . is that she did not include the raw data from the MCMI-IV [(Millon Clinical Multiaxial Inventory, Fourth Edition)] or the ADOS-2 [(Autism Diagnostic Observation, Second Edition) testing]. She only included the raw data from the WAIS-IV [(Wechsler Adult Intelligence Scale, Fourth Edition) testing], which . . . evaluates [the Plaintiff's] cognitive functioning. So for a psychologist to look at a report written by another psychologist and not see the raw data, . . . there are points that I would be able to determine from that data that might not be in the narrative. For example, the [MCMI] has a scale that measure[s] the validity of the measure. And often in settings where there is the potential for secondary gain, such as a disability hearing, you will find that individuals will exaggerate their symptoms, which is one of the reasons that that particular measure is not recommended for use in any legal setting. And I would be very interested to see those scales. Also, without the ADOS data, it's not really clear what aspects of the autism spectrum disorder [Dr. Kinast] finds meet the diagnostic criteria. Also, I did not see her records. I was under the impression from her report . . . that she was treating the [Plaintiff] and her treatment records are not here. So although I can form an opinion based on what I have, I believe that there are important pieces of information missing.

*Id.* at 76-77.

Dr. Blitz went on to testify that she did not "find the diagnosis of autism spectrum disorder to be sufficiently supported by the evidence" in part because of the missing raw testing data from Dr. Kinast's neuropsychological examination and also because "the evidence as a whole [did] not support a developmental disability." *Id.* at 77-78. She again acknowledged, however, that having Dr. Kinast's treatment

4

notes and raw testing data might shed some light on the autism diagnosis, to which the Plaintiff's counsel responded,

> I would like to point out to the ALJ at this point that I did ask Dr. Kinast to provide me with her record[s] . . . and for whatever reason she did not do so. And I . . . wasn't aware that their availability would be considered indispensable to support her findings and . . . the information that she relied upon in this case. So if that's the case and her qualifications are basically going to be called into question, I would like the opportunity to subpoena Dr. Kinast to produce all her records and test results.

*Id.* at 82-84. The ALJ noted the request but asked the Plaintiff's counsel to detail the actions he had taken to obtain Dr. Kinast's treatment notes and raw testing data and request them from her again. *See id.* at 84, 110.

After the hearing, the Plaintiff's counsel sent an email to Dr. Kinast requesting "[a]ll counseling and treatment records" as well as the "[r]aw testing data" from the "psychological tests" that she had performed on the Plaintiff. *Id.* at 464-65. Dr. Kinast responded that she could send her notes but that she could only release her raw testing data to someone who was "trained to read such data," such as a "psychologist or neuropsycholog[i]st." *Id.* at 464. Dr. Kinast eventually provided some of her treatment notes but explained that they were "limited" because most of her records were in her office and she had not been to her office since the outbreak of the COVID-19 pandemic in early March 2020. *Id.* at 895-96.

The ALJ ultimately issued a written decision in April 2021 finding the Plaintiff not disabled. *See id.* at 56. In her decision, the ALJ effectively denied the Plaintiff's subpoena request, explaining,

> The [Plaintiff's] representative requested a subpoena for records from [Dr. Kinast], which I did not grant because records were received from

5

> [Dr. Kinast] on February 19, 2021[,] and covered treatment from September 17, 2019[,] through February 2, 2021. I find that sufficient evidence existed to establish the nature, severity, or duration of the [Plaintiff's] impairments . . . . I note that the State Agency medical experts reviewed the evidence through the reconsideration date and Dr. Blitz reviewed the evidence up through the hearing. In addition, the representative thoroughly argued the [Plaintiff's] allegations at both hearings and the [Plaintiff] was able to provide[ ] testimony.

*Id.* at 40-41 (citations omitted).

The ALJ went on to find that the Plaintiff's alleged autism was not a medically determinable impairment because the evidence lacked "medically acceptable clinical, diagnostic techniques, and/or testing" that "would support" the alleged autism. *Id.* at 45. In so finding, the ALJ was persuaded by the opinion of Dr. Blitz—and, to some extent, the opinion of Dr. Podczerwinsky[1]—that autism was not supported by the evidence of record, explaining,

> At the supplemental hearing, [Dr. Blitz] testified that there was sufficient medical evidence to allow her to formulate an opinion about the nature and severity of the [Plaintiff's] impairments during the relevant period. She noted that Dr. Kinast did not include[ ] all of her raw testing data. . . . Dr. Blitz noted that although Dr. Kinast had a treating relationship with the [Plaintiff], the overall clinical picture, signs, and evidence did not support a diagnosis of autism. Dr. Blitz noted that [Dr. Podczerwinsky's] medical interrogatory also addressed the deficits in Dr. Kinast['s] conclusions regarding the autism diagnosis. Effectively, she noted that Dr. Kinast's testing and diagnosis, absent treatment notes and full raw data, were insufficient to reach a conclusion that Autism Spectrum Disorder was a severe impairment. She also noted that other providers did not question whether the claimant had a developmental or autism disorder. Dr. Blitz noted [that] this diagnosis was not consistent with the rest of the evidence.

*Id.* at 49.

---

[1] The ALJ found Dr. Podczerwinsky's opinion "unpersuasive" overall but noted that her rejection of Dr. Kinast's autism diagnosis was "consistent with Dr. Blitz's opinion and the evidence as a whole." Record at 53.

Conversely, the ALJ found Dr. Kinast's "opinions and conclusion[s] unpersuasive because they were not supported [by] nor consistent with her own progress notes, or the record as a whole" and her "testing conclusions" lacked the "necessary raw data to establish a diagnosis" of autism. *Id.* at 53. The ALJ also noted that the treatment notes that Dr. Kinast had provided were "rather illegible and poorly descriptive" and "provided little, if any, clarity regarding the [Plaintiff's] functional abilities." *Id.*

On appeal, the Plaintiff argues that the ALJ failed in her duty to adequately develop the record. *See* Statement of Errors at 9-14. Specifically, the Plaintiff faults the ALJ for denying her request to subpoena Dr. Kinast's records and testing data and then subsequently relying on the absence of those things to reject Dr. Kinast's opinion and the autism diagnosis. *See id.* at 13. The Plaintiff contends that the error was prejudicial "because many of the limitations identified by [the Plaintiff] and by Dr. Kinast could not otherwise be supported and substantiated by [her] other diagnosed mental impairments." *Id.* at 13-14.

The Commissioner, on the other hand, argues that the ALJ's rejection of the autism diagnosis was "directly supported by the opinions of" Drs. Blitz and Podczerwinsky and that the ALJ "did not abuse her discretion by declining to subpoena" Dr. Kinast's "treatment records and testing data." Opposition (ECF No. 18) at 1. Such treatment records and testing data, the Commissioner contends, "were not reasonably necessary for full development of the record" because

7

the ALJ "reasonably discounted" Dr. Kinast's autism diagnosis for being "inconsistent with the other medical opinions and unsupported by the record." *Id.* at 5.

The Plaintiff has the better argument.

While a claimant "bears the burden of proof on the issue of disability," *Carrillo Marin v. Sec'y of Health & Hum. Servs.*, 758 F.2d 14, 17 (1st Cir. 1985), "Social Security proceedings are inquisitorial rather than adversarial" and the ALJ has a "duty to investigate facts and develop the arguments both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). That is not to say that the ALJ is "required to function as the claimant's substitute counsel," *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994), but, where there are material gaps in the record, the ALJ does have increased responsibility to see that those gaps are somewhat filled if it is within her power to do so without undue effort, *see Currier v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 594, 598 (1st Cir. 1980).

One power the ALJ has is that she "may . . . issue subpoenas . . . for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. § 404.950(d). However, "for both legal and practical reasons, the [ALJ] need only accede to a request to subpoena a reporting physician when reasonably necessary to the full development of evidence in the case." *Lona D. v. Saul*, No. 2:20-cv-00191-JAW, 2021 WL 1788403, at *3 (D. Me. May 4, 2021) (rec. dec.) (cleaned up), *aff'd*, 2021 WL 3056373 (D. Me. July 20, 2021).

With these standards in mind, I begin by stating the obvious: Dr. Kinast's failure to provide her complete treatment notes and raw testing data created a gap

8

in the record. As a practical reality, however, there are always some gaps in the medical evidence. The critical question, then, is whether the missing notes and data were reasonably necessary to the full development of the case such that the ALJ should have granted the Plaintiff's request to subpoena them.

To answer this question, I need not look much further than the ALJ's own decision. Although she denied the Plaintiff's subpoena request on the basis that the evidence was sufficient for her to make a decision, *see* Record at 40-41, the ALJ rejected Dr. Kinast's autism diagnosis, in part, because Dr. Kinast did not provide the "*necessary* raw data to establish" that diagnosis, *id.* at 53 (emphasis added). She also found that the relatively few treatment notes that Dr. Kinast had provided offered "little, if any, clarity regarding [the Plaintiff's] functional abilities" but failed to acknowledge Dr. Kinast's qualification that the notes were incomplete. *Id.* at 53, 896.

Dr. Blitz—on whose opinion the ALJ primarily relied in rejecting Dr. Kinast's autism diagnosis—similarly recognized the significance of the missing notes and data. *See id.* at 45, 53, 76-77, 84. In a bit of wishful thinking, the Commissioner contends that Dr. Blitz nevertheless testified that Dr. Kinast's missing "records were unnecessary" given the other evidence in the record. Opposition at 7 (citing Record at 49, 77). But what Dr. Blitz actually said about Dr. Kinast's missing records was, "[A]lthough I can form an opinion based on what I have*, I believe that there are important pieces of information missing.*" Record at 77 (emphasis added).

9

That both the ALJ and Dr. Blitz highlighted the materiality of the missing information from Dr. Kinast and suggested that their decisions might have been different had they been able to review it amply confirms that the information was "reasonably necessary to the full development of evidence in the case." *Lona D.*, 2021 WL 1788403, at *3 (cleaned up). It also undermines the Commissioner's argument that the Plaintiff has failed to show how she was harmed by the ALJ's failure to pursue the missing information. *See* Opposition at 3. As the Plaintiff points out, if the ALJ had obtained the records and accepted Dr. Kinast's autism diagnosis she would have had to account for the limitations flowing from that impairment when assessing the Plaintiff's RFC, which, in turn, might have resulted in a different decision. *See* Statement of Errors at 13-14; *Levesque v. U.S. Soc. Sec. Comm'n, Acting Comm'r*, No. 18-cv-420-LM, 2019 WL 2004298, at *7 (D.N.H. May 7, 2019) (holding that an ALJ's failure to pursue missing x-ray results was prejudicial to a claimant where the claimant's treating doctor relied on the results in forming his opinion and the ALJ relied on the absence of the results in rejecting that opinion thereby demonstrating that "the inclusion of such records may have led to a different decision" (cleaned up)); *cf. Dawes v. Astrue*, No. 1:11-cv-272-DBH, 2012 WL 1098449, at *6 (D. Me. Mar. 30, 2012) (rec. dec.) (holding that an ALJ failed in his duty to develop the record where he did not attempt to obtain the claimant's more recent psychotherapy treatment records to fill in a gap in the medical evidence), *aff'd*, 2012 WL 1313483 (D. Me. Apr. 17, 2012).

The Commissioner does not argue that issuing a subpoena would have required undue effort on the ALJ's part. *See generally* Opposition. And it seems likely that issuing a subpoena would have been a fruitful exercise where Dr. Kinast explicitly acknowledged that she had additional treatment notes and the raw testing data but refused to turn them over to the Plaintiff's counsel. *See* Record at 464, 895-96. Under the circumstances, the ALJ abused her discretion in declining to subpoena Dr. Kinast and more generally failed to fulfill her duty to develop the record.[2] *See, e.g.*, *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-474-FPG, 2018 WL 4940726, at *4 (W.D.N.Y. Oct. 12, 2018) ("[T]he lack of treatment records from [the claimant's doctor] created an obvious gap that the ALJ was obligated to develop. Instead, the ALJ used that gap to [the claimant's] detriment [by discounting the doctor's opinion]. . . . [S]he should have subpoenaed [the doctor's] records because they were reasonably necessary to the proper resolution of the [claimant's] case.").[3]

Given this conclusion, I need not consider whether—as the Commissioner argues—other evidence in the record supports the ALJ's rejection of Dr. Kinast's autism diagnosis. *See* Opposition at 5-10. That the ALJ may have relied on other evidence does not obviate her error in failing to develop the record. *See, e.g.*, *Kennedy v. Comm'r of Soc. Sec.*, No. 17-CV-909-FPG, 2019 WL 988889, at *3 (W.D.N.Y. Mar. 1, 2019) ("The Commissioner argues that the ALJ was not obligated to issue a

---

[2] On remand, the ALJ and the Plaintiff are encouraged to work together in a practical way to secure the missing information from Dr. Kinast. Now that the pandemic has subsided, Dr. Kinast may be in a better position to provide her full treatment notes, and if she understands that her raw testing data will be reviewed by a qualified expert such as Dr. Blitz, she may be willing to provide it without being subpoenaed.

[3] In light of this conclusion, I need not address the Plaintiff's other arguments in favor of remand. *See* Statement of Errors at 14-16.

subpoena, and as a result, did not violate his duty to develop the record, because the ALJ had more than enough evidence in the record to make an informed decision as to [the claimant's] abilities.  The Court disagrees with such [a] contention because before deciding whether the Commissioner's decision is supported by substantial evidence it must first be satisfied that the ALJ provided [the claimant] with a full hearing under the . . . regulations and also fully and completely developed the administrative record." (cleaned up)).

### IV.  Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: March 9, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge